1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHASE NELSON,                          No. 2:24-cv-01710-DJC-AC

12                 Plaintiff,

13   v.                                     ORDER

14   AMAZON.COM, INC., et al.,

15                 Defendants.

16

17

18         Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon

19   Logistics, Inc. move for summary judgment, or, in the alternative, summary

20   adjudication on Plaintiff Chase Nelson's employment discrimination claims alleging

21   violations of California's Fair Employment and Housing Act, Gov. Code §§ 12940, *et*

22   *seq.*  For the reasons discussed below, the Motion for Summary Judgment is

23   GRANTED IN PART.

24   ////

25   ////

26   ////

27   ////

28   ////

                                          1

1

**BACKGROUND**

2          On May 9, 2024, Plaintiff Chase Nelson ("Plaintiff") initiated this action in state

3    court against Defendants Amazon.com, Inc., Amazon.com Services, LLC, Amazon

4    Logistics, Inc., (collectively "Amazon") and Does 1–50.  (*See generally* Compl. (ECF

5    No. 1-1).)[1]  Plaintiff asserted several claims under California Government Code section

6    12940, *et seq.* ("FEHA"), including (1) disability discrimination; (2) disability

7    harassment; (3) disability retaliation; (4) failure to accommodate; (5) failure to engage

8    in a good faith and interactive process; (6) failure to prevent discrimination,

9    harassment, and retaliation; and (7) wrongful termination.  Amazon filed an Answer on

10   June 13, 2024.  (Answer (ECF No. 1-1) at 7.)  On June 14, 2024, Amazon removed the

11   action to this Court.  (Not. of Removal ("NOR") (ECF No. 1).)  On September 26, 2025,

12   Amazon moved for summary judgment, or, in the alternative, summary adjudication.

13   (Mot. (ECF No 9).)

14         The Motion is fully briefed.  In support of its Motion, Amazon filed a

15   memorandum of points and authorities, a statement of undisputed material facts

16   (DSUF (ECF No. 9-2)), the declaration of Maureen K. Bogue (Bogue Decl. (ECF No. 9-

17   3)), the declaration of Christen Robles (Robles Decl. (ECF No. 9-4)), the declaration of

18   Alex Hayes (Hayes Decl. (ECF No. 9-5)), and the declaration of Jeff Brostrom (Brostrom

19   Decl. (ECF No. 9-6).)

20         Plaintiff filed an Opposition.[2]  (Opp'n (ECF No. 15).)  In support of the

21   opposition, Plaintiff filed the declaration of Jamie E. Wright (Wright Decl. (ECF

22   No. 16)), exhibits (Exs. Vols. 1–5 (ECF Nos. 17 through 17-4)), a response to Amazon's

23   statement of undisputed material facts (P's Response to DSUF (ECF No. 18)), Plaintiff's

24   _____

25   [1]  Because the Complaint and the Answer are part of the same filing, the Court will cite to the internal
pagination for each document rather than the blue ECF numbering.

26
[2]  The Court issued an order to show cause after Plaintiff did not initially file an opposition.  (ECF
27   No. 12.)  Plaintiff filed an ex parte application for relief, which the Court granted, discharging the order
to show cause.  (ECF No. 14.)  Plaintiff thereafter filed a timely opposition pursuant to the Court's
28   modified briefing schedule.  (ECF Nos. 14, 15.)

1    statement of undisputed material facts (PSUF (ECF No. 18-1)), a request for judicial

2    notice (RJN (ECF No. 19)), and objections to certain statements in Christen Robles's

3    declaration (P's Am. Objs. (ECF No. 21)).[3]

4        Amazon filed a Reply.  (Reply (ECF No. 22).)  In connection with the reply,

5    Amazon filed the declaration of Maureen K. Bogue (Bogue Reply Decl. (ECF No. 22-

6    1)), a reply to Plaintiff's response to Amazon's statement of undisputed material facts[4],

7    a response to Plaintiff's statement of undisputed facts (Amazon's Resp. to PSUF (ECF

8    No. 22-3)), a response to Plaintiff's amended evidentiary objections (Amazon's Resp.

9    to P's Am. Objs. (ECF No. 22-4), and, last, evidentiary objections to the evidence

10   Plaintiff submitted in support of the opposition (Amazon's Objs. (ECF No. 22-5).

11                              **LEGAL STANDARD**

12       Summary judgment is appropriate where "there is no genuine dispute as to any

13   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

14   56(a).  A dispute is "genuine" if "a reasonable jury could return a verdict for the

15   nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is

16   "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

17       The moving party bears the initial burden of informing the court of the basis for

18   the motion and identifying the portion of the record "which it believes demonstrate

19   the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

20   317, 323 (1986).  The burden then shifts to the opposing party to "establish that there

21   is a genuine issue of material fact . . . "  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio*

22   *Corp.*, 475 U.S. 574, 585 (1986).  The parties must "(A) cit[e] to particular parts of

23   materials in the record ... or (B) show[ ] that the materials cited do not establish the

24   ---

25   [3]  Plaintiff seeks to judicially notice California Government Code section 12946 and Labor Code section 1198.5.  (*See generally* RJN.)  The Court grants the request as the statutes' accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

26
27   [4]  The Court will not consider Amazon's reply to Plaintiff's response to Amazon's statement of undisputed material facts or Amazon's response to Plaintiff's amended objections.  This Court's standing order in civil cases provides that "the moving party may not file a reply to the nonmoving party's response to the Statement of Undisputed Facts."  (DJC's Standing Order in Civil Cases at 3.)

28

1 absence or presence of a genuine dispute, or that an adverse party cannot produce

2 admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  When determining a

3 motion for summary judgment, "the inferences to be drawn from the underlying facts

4 must be viewed in the light most favorable to the party opposing the motion."

5 *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up and citation omitted).

6 Ultimately, for the moving party to succeed, the Court must conclude that no rational

7 trier of fact could find for the opposing party.  *See id.*

8    A court may consider evidence as long as it is "admissible at trial."  *Fraser v.*

9 *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on

10 the evidence's form, but its content.  *Block v. City of Los Angeles*, 253 F.3d 410, 418–

11 19 (9th Cir. 2001) (citation omitted).  The party seeking admission of evidence "bears

12 the burden of proof of admissibility."  *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999,

13 1004 (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the

14 party seeking admission must direct the court to "authenticating documents,

15 deposition testimony bearing on attribution, hearsay exceptions and exemptions, or

16 other evidentiary principles under which the evidence in question could be deemed

17 admissible . . . ."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).

18 But if evidence falls short of the formalities of Rule 56, a district court still may exercise

19 its discretion "to be somewhat lenient."  *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS,*

20 *Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (collecting cases).

21            **DISCUSSION**

22 **I.  Evidentiary Objections**

23    The parties raise various objections to each other's proffered evidence.  Plaintiff

24 challenges certain statements made by Amazon's declarant Christen Robles on the

25 grounds that they are hearsay, lack foundation, and lack personal knowledge.  (*See*

26 *generally* P's Am. Objs.)  Amazon filed a response to Plaintiff's amended objections.

27 (*See generally* Amazon's Resp. to P's Am. Objs.)  Amazon also filed separate

28 evidentiary objections to Plaintiff's opposition evidence.  (*See generally* Amazon's

1  Objs.)  Under the summary judgment standard, "[a] party may object that the material

2  cited to support or dispute a fact cannot be presented in a form that would be

3  admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The parties must show that certain

4  evidence cannot be introduced in an admissible form at trial.  *See McCarthy v. R.J.*

5  *Reynolds Tobacco Co.*, No. 2:09-cv-02495-WBS-DAD, 2011 WL 13405571, at *1 (E.D.

6  Cal. Mar. 31, 2011) (explaining that federal rule 56 "implicitly limits objections to those

7  that could not be cured at trial") (citation omitted).  Except where noted below, the

8  parties' evidentiary objections are overruled.

9  **II.  Undisputed Facts[5]**

10  **A.  Plaintiff's Hire**

11  Amazon hired Plaintiff as a "Picker" or "Fulfillment Associate" in a seasonal role

12  at an Amazon facility located in Sacramento, California, known as SMF1, and his first

13  day of work was July 23, 2020.  (DSUF ¶ 8.)  As a Picker or Fulfillment Associate,

14  Plaintiff's job duties included picking inventory that has been ordered as part of a

15  customer's order, removing the inventory from the storage pods, transferring it to a

16  tote, which is then sent down to the conveyance for packaging into a customer

17  package.  (*Id.* ¶ 10.)  At all times during his employment with Amazon, Plaintiff needed

18  to be physically located at the SMF1 facility to perform his job duties.  (*Id.*)  Upon hire,

19  Plaintiff was given a badge, which was used by Plaintiff to enter the facility where he

20  worked.  (PSUF ¶ 4.)  The badge is the only way to access the building.  (*Id.*)  The same

21  badge was used by Plaintiff to clock in and begin his shift.  (*Id.*)

22  **B.  Plaintiff's Injury in the Workplace and Resulting Work Restrictions**

23  On or about July 30, 2020, Plaintiff experienced a workplace injury and filed a

24  workers' compensation claim shortly thereafter.  (DSUF ¶ 9.)  The injury was to

25  Plaintiff's lower back that radiated down to his foot.  (PSUF ¶ 6.)  From August 2, 2020

26  through January 20, 2021, Amazon's Workplace Health and Safety department

27

28

---

[5]  Except where noted, the recited facts are considered undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

1   received medical notes from Plaintiff's health care providers, setting forth work

2   restrictions for Plaintiff that changed over time.  (DSUF ¶ 11.)  After his workplace

3   injury, Amazon accommodated Plaintiff's work restrictions by identifying light duty

4   positions or other positions that could be adjusted to meet his work restrictions, and

5   Plaintiff accepted these job placements.[6]  (DSUF ¶ 12; PSUF ¶ 12.)

6           Darryl Moncion was a Process Assistant at SMF1.  (DSUF ¶ 13.)  Plaintiff made

7   the following statements regarding his interactions with Darryl:

> "Not necessarily a complaint with -- with what Darrell [sic] was instructing us to do.  It was with my accommodations, with my work restrictions, and him proceeding to say when I was working that I was not injured."
>
> "He made a comment saying that I was not really injured. And quote/unquote, I'm "faking it.""
>
> "He [Darryl]would tell us to run the totes that came down from the conveyer to those designated areas, and the – it went against my work restrictions because the totes were -- I would say approximately up to 50 to 60 pounds.  And pushing a cart full of a stack of, I want to say 10 or 11, around the facility in a timely manner."
>
> "He would say, you guys need to step up, and pretty much, do your job.  And we were -- everybody in that area was also dealing with medical injuries."

18  (DSUF ¶ 13.)  In response to comments from Darryl, Plaintiff told him "I can't do that

19  because of my work restrictions."  (*Id.* ¶ 14.)  Plaintiff also told Darryl that he wouldn't

20  be tote running anymore because of his work restrictions.  (*Id.*)  Plaintiff confirmed he

21  was not terminated for refusing to run totes.  (*Id.*; Nelson Dep. 69:11–24.)  Plaintiff did

22  not complain to Human Resources or SMF1 management about Darryl's comments.[7]

---

[6] While Plaintiff disputes that he accepted Amazon's proposed job placements and disputes that they were lighter duty, he acknowledges that in response to his workplace injury Amazon moved him out of the "Pick" department to "Receiving," a different department.  (PSUF ¶ 12; Nelson Dep. 53:8–12.)

[7] Plaintiff concedes that he did not complain to Human Resources about Darryl's words.  (Nelson Dep. 70:13–14.)  While Plaintiff disputes that he did not complain to management, he does not state in his deposition testimony that he did complain to management, but only that he complained to the on-site medical representative and "Concentra," without further explanation.  (Nelson Dep. 69:25–70:4; 70:13–71:2.)

1    (DSUF ¶ 15.)  But, the accommodation Plaintiff received from Amazon caused him a

2    lot of pain.  (Amazon's Resp. to PSUF ¶ 18.)  On November 16, 2020, Plaintiff's

3    worker's compensation representative wrote to Amazon's workers' compensation in-

4    house department representative and informed her that some of Plaintiff's restrictions

5    were not being accommodated.  (Amazon's Resp. to PSUF ¶ 24.)

6          From August 2, 2020 through January 20, 2021, Plaintiff's doctors would submit

7    new work restrictions, sometimes per Plaintiff's request, and Amazon would identify

8    alternative placements, which Plaintiff then accepted.  (DSUF ¶ 17.)

9    **C.  Plaintiff's Badge**

10         It was optional for Plaintiff to either clock in for his shifts using the Amazon A to

11   Z app or by using his badge.  (Amazon Resp. to PSUF ¶ 21.)  Between December 21,

12   2020 and February 5, 2021 Plaintiff tried to use his badge to swipe in and out.

13   (Amazon's Resp. to PSUF ¶ 25.)  At least 2 to 3 times a week Plaintiff would have an

14   issue swiping his badge due to an error so he would use the A to Z app to track his

15   time instead.  (*Id.*)  However, he could still scan into the building.  (P's Resp. to DSUF

16   ¶¶ 30–31.)

17         On or about February 5, 2021, Plaintiff was informed by Human Resources that

18   he would be placed on a paid administrative leave while an investigation was

19   conducted into him "stealing time."  (DSUF ¶ 18.)  On February 12, 2021, Human

20   Resources and/or management at SMF1 informed Plaintiff that his employment was

21   terminated for "stealing time" when he submitted missed punches when not in the

22   building.  (Nelson Dep. 108:1–2, 110:12–14 and Exhibit 8; P's Resp. to DSUF ¶ 21.)[8]

23

24

25   _____

26   [8]  Plaintiff disputes Amazon's characterization of the termination reason as "timecard fraud," however,
     Plaintiff elsewhere acknowledges that "stealing time" is claiming "unauthorized time."  (Nelson Dep.

27   106:9–16.)  Exhibit 8, entered into evidence during Plaintiff's deposition, states that Plaintiff was
     terminated for submitting "at least one of these [missed] punches for a time for which [Plaintiff was] not

28   in the building."  (Ex. 8 to Nelson Dep. 110:12–14.)

**D. Amazon's Process for Tracking Time**

In late 2020 and early 2021, at SMF1, employees could clock in and clock out using the kiosks located in the building, immediately after badging through the turnstiles and entering the production floor, or they could clock in and out using the Amazon A to Z application.  (DSUF ¶ 24.)  If an employee forgot to clock in or clock out using the kiosk or the A to Z app (or if either system was not functioning properly), they could submit "missed punches" through the A to Z app, or they could request assistance on submitting missed punches from HR or their supervisor.  (DSUF ¶ 25.) Amazon employees are responsible for ensuring their time records are correct.  (DSUF ¶ 26.)[9]

During late 2020 and early 2021, when investigating a case of suspected time fraud, Amazon's Human Resources Department (referred to as PXT by the parties) at SMF1 considered and reviewed the following pieces of information: (1) timecard records; (2) badge swipe records; (3) statement by the employee being investigated; (4) witness statements, where applicable; and (5) video footage, where applicable. (DSUF ¶ 27.)  As part of the investigation into Plaintiff's suspected timecard fraud, a review of badge swipe records and clock-in and clock-out times revealed that Nelson had clocked in for work at times and/or days when he never entered the building. (DSUF ¶ 29.)  Nelson admits that his Amazon badge allowed him to access the production floor and swipe through the turnstiles.  (P's Resp. to DSUF ¶ 30.)  Nelson

---

[9]  The parties dispute whether time records mistakes must be "corrected before they are submitted," as Amazon proffers in its statement of undisputed material facts.  (DSUF ¶ 26.)  Plaintiff contends there is no policy reflecting such a requirement.  (P's Resp. to DSUF ¶ 26.)  During deposition, while Plaintiff agreed that Amazon "expected employees to be truthful when reporting hours worked," (Nelson Dep. 81:3-10), Amazon's declarant Christen Robles states that "Amazon employees are responsible for ensuring their timekeeping records are accurate.  Amazon employees can contact the . . . human resources department[ ] if they have concerns about their timekeeping records or need to make changes," (Robles Decl. ¶ 5).  On the other hand, Amazon's declarant Jeff Brostrom states that "[h]ourly Amazon employees are always responsible for ensuring their time records are correct and that any mistakes are corrected before they are submitted." (Brostrom Decl. ¶ 8.)  Thus, given this discrepancy in the testimony of Amazon's declarants, the fact of whether mistakes must be corrected before being submitted or may be revised after submission remains disputed.  Nevertheless, the Court concludes the dispute is not material.

1  complained that, although his badge would allow him access to the production floor,

2  he could not use his badge to clock in and out on the kiosks located in the building,

3  accessible after badging through the turnstiles, from September to December 2020,

4  when he was not "on the schedule."  Instead, he had to use the A to Z app to clock in

5  from September through December 2020.  (P's Resp. to DSUF ¶ 31.)  Plaintiff claims

6  that the A to Z app malfunctions started in September 2020 through his termination

7  date.  (*Id.* ¶ 33.)

8      **E.  Plaintiff's Appeal**

9          Plaintiff appealed his termination for timecard fraud and the termination was

10  upheld on appeal.  (DSUF ¶ 22; Nelson Dep. 132:13 and Exhibit 9 at 4.)[10]  On or about

11  March 3, 2021, Plaintiff attended a meeting by phone with Human Resources to

12  discuss the appeal of his termination.  Plaintiff testified at deposition that he could not

13  recall how long the hearing lasted, but said he did recall a discussion of his overall

14  situation, including his injury and the alleged malfunctioning of the A to Z app.  (DSUF

15  ¶ 23.)

16  **III. Plaintiff's Claims**

17          Plaintiff asserts the following claims under FEHA in his Complaint: 1) disability

18  discrimination; 2) disability retaliation; 3) failure to accommodate; 4) failure to engage

19  in a good faith and interactive process; 5) failure to prevent discrimination and

20  retaliation; and 6) wrongful termination.[11]

21

22

23

24  [10]  Exhibit 9 was entered into evidence during Plaintiff's deposition.  (Nelson Dep. 132:13.)  Exhibit 9
    reflects that Plaintiff was notified of the outcome of his appeal on 3/3/2021 and that "the original
25  outcome" was upheld.  (Ex. 9 at 4.)

26  [11]  Plaintiff originally pled a disability harassment claim and failure to prevent harassment claim.  In the
    meet and confer prior to Amazon's filing of the Motion, the parties agreed to draft a stipulation
27  dismissing these two claims as well as Plaintiff's request for punitive damages.  (Bogue Decl. ¶ 6 and
    Ex. C.)  While the stipulation has not yet been filed, the parties did not address these claims in their
28  briefing, thus, the Court will not address the harassment claims or punitive damages.

**A.  FEHA Disability Discrimination Claim**

"Section 12940, subdivision (a) prohibits an employer from discriminating against a person 'in compensation or in terms, conditions, or privileges of employment' as the result of physical or mental disability." *Miller v. Dep't of Corrs. & Rehab.*, 105 Cal. App. 5th 261, 274 (2024) (quoting Cal. Gov. Code § 12940(a)). "California applies the *McDonnell Douglas* burden-shifting framework and other federal employment law principles when interpreting the FEHA." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012).

Ordinarily, the plaintiff must first establish a prima facie case, which requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability. *Thomsen v. Georgia-Pacific Corrugated, LLC*, 190 F. Supp. 3d 959, 969 (E.D. Cal. 2016) (citation omitted). If "the plaintiff establishes a prima facie case, the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact . . . that its action was taken for a legitimate, nondiscriminatory reason." *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 355–56 (2000) (internal quotation marks omitted). "If the employer sustains this burden, the presumption of discrimination disappears," and the plaintiff must then show "the employer's proffered reasons as pretexts for discrimination, or [ ] offer any other evidence of discriminatory motive." *Id.* "The employer's motive for any alleged adverse employment action becomes subject to scrutiny only after the 'employee meets this burden' to show the ability to perform the essential functions of the job." *Miller*, 105 Cal. App. 5th at 275 (citation omitted).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (citation omitted). "Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of

1   [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its

2   decision to terminate plaintiff's employment." *Id.* (alterations in original) (quoting

3   *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247 (2008)).  If the employer

4   meets its burden, the plaintiff must demonstrate either "that the defendant's showing

5   was in fact insufficient or . . . that there was a triable issue of fact material to the

6   defendant's showing." *Id.* at 746 (alterations in original) (citations omitted).

7          Amazon concedes for the purposes of this Motion that Plaintiff has a disability

8   or was perceived as having a disability but contends summary judgment on this claim

9   is appropriate because Plaintiff fails to satisfy the remaining elements of his prima

10  facie case and that Amazon had a legitimate reason to terminate him.  (Mot. at 15–16.)

11          **1.  Performing Job Satisfactorily**

12          The second prong of the prima facie case requires Plaintiff to establish that he

13  was qualified for his job, that is, he was "performing his job satisfactorily." *Hawn v.*

14  *Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).  Amazon argues that

15  Plaintiff cannot establish this element because Amazon legitimately terminated

16  Plaintiff due to timecard fraud, which violates Amazon's Standards of Conduct.  (Mot.

17  at 16.)  As support, Amazon provides the declaration of Human Resources Manager

18  Christen Robles, its Person Most Qualified, and attaches as exhibits certain records

19  reflecting Amazon's policies and Plaintiff's timecard and history of access to the

20  building where Plaintiff worked.  (DSUF ¶ 29.)  Plaintiff objects that because Robles

21  lacks personal knowledge of the facts he testified to, the records are hearsay and

22  inadmissible.  (P's Resp. to DSUF ¶ 29.)  Amazon rebuts that the records are

23  authenticated business records under Federal Rule of Evidence 803(6) and an

24  exception to the hearsay rule.  (Reply at 12.)  Amazon is correct.

25          Rule 803(6) provides that "[a] record of an act, [or] event" is not excluded by the

26  rule against hearsay, so long as it satisfies the following criteria:

27              (A) the record was made at or near the time by--or from
                    information transmitted by--someone with knowledge;

28

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Importantly, the person seeking to introduce the business records "need not have personal knowledge of the creation of the document . . . . Nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995); *see also Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 ("Hearsay is inadmissible in a court of law unless it comes under one of the exceptions set forth in Federal Rule of Evidence 803.") (citation omitted). "It is not necessary for each individual who entered a record . . . to testify as to the accuracy of each piece of data entered." *U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1044–45 (9th Cir. 2009) (citing *United States v. Smith*, 609 F.2d 1294, 1302 (9th Cir.1979) ("The witness must only be in a position to attest to [the evidence's] authenticity") (citation and internal quotations omitted)); *see also Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (holding that the qualified witness "need only be familiar with the company's recordkeeping practices.").

Robles's declaration meets the requirements of Rule 803(6). Under penalty of perjury, Robles states he has reviewed documents maintained on Amazon's human resources portal in the usual course of business and that Plaintiff acknowledged completing review of Amazon's various policies, including the Owner's Manual,

1  Standards of Conduct, and all onboarding documents. (Robles Decl. ¶¶ 2–3, 5.) The

2  Standards of Conduct explicitly prohibit falsely altering a timekeeping document,

3  which may result in termination of employment following one offense. (*Id.* ¶ 4.)

4  Robles declares that he received Plaintiff's investigation file from an employee with

5  direct access to the documents. (*Id.* ¶ 6.) He asserts that based on his review of

6  Plaintiff's investigation records and his experience in timecard fraud investigations,

7  the human resources team conducted the investigations and that those documents,

8  which were kept in the normal course of business, reflected that Plaintiff's

9  employment was terminated due to timecard fraud. (*Id.* ¶¶ 7–9.) These investigation

10  records are attached as Exhibit B to Robles's declaration. (*Id.* Ex. B.) In evaluating the

11  documents, they reflect instances of work hours claimed when Plaintiff was "not

12  badged in." (Ex. B at 15–16.) The records also reflect Plaintiff's ID number, badge ID

13  number, Plaintiff's first and last name, the time Plaintiff clocked in and out, and

14  whether he was granted access, had an invalid badge, or was "not badged in." (*Id.* at

15  13–17.) There is also a column labeled "fraud" with certain values listed. (*Id.*)

16  Robles's declaration satisfies the requirements of Rule 803(6) and lays the foundation

17  for the records to be admitted as business records. Plaintiff's evidentiary objections

18  that Robles's declaration is not based on personal knowledge, is hearsay, or lacks

19  foundation are inapplicable and thus overruled.

20      Amazon also provides the declaration of Jeff Brostrom, the Senior Operations

21  Manager at the facility where Plaintiff worked during the events at issue. (*See*

22  *generally* Brostrom Decl.) Brostrom declares, based on his personal knowledge, that

23  he had access to records maintained in the normal course of business "pertaining to

24  employee hours worked and badge swipe records, among other things." (*Id.* ¶ 3.)

25  He declares that when an employee enters the facility, "they use their badge to go

26  through the turnstiles[,]" and "[n]o one is permitted beyond the foyer without

27  badging in and going through the turnstiles." (*Id.* ¶ 6.) In the event an employee

28  forgets their badge, they "must wait with security in the foyer until [human resources]

13

1    confirms they are an active employee." (*Id.* ¶ 7.)  Only after receiving confirmation

2    "does security issue the employee a temporary badge, which they can then use to

3    enter through the turnstiles." (*Id.*)  Notably, Plaintiff also concedes that "the badge is

4    the only way to access the building."  (PSUF ¶ 4.)

5           Plaintiff alternatively contends that the information showing when employees

6    entered and exited the building through the turnstiles by way of their employee

7    badge—"the Lenel data"—was destroyed after a year, pointing to Robles's prior

8    statement in a deposition.  (Opp'n at15; Robles Dep. 39:13–19.)  According to

9    Plaintiff, Robles's earlier assertion that Lenel data is destroyed after a year undercuts

10   Amazon's proffered reason for termination.  While Amazon does not dispute Robles's

11   prior statement (Amazon's Resp. to PSUF ¶ 50), Amazon also asserts that Plaintiff's

12   Lenel data was retained as to Plaintiff, produced in litigation through fact discovery,

13   and authenticated through Christian Robles's declaration and Exhibit B.  (Reply at 13;

14   Bogle Reply Decl. ¶ 5.)  As discussed, Exhibit B is admissible as business records

15   under Rule 803(6), and Plaintiff has not introduced evidence to show that the

16   business records lack indicia of trustworthiness or that Christen Robles was not

17   qualified to attest to their authenticity.

18          In summary, there is no genuine dispute of material fact that Plaintiff was not

19   performing his job satisfactorily.

20        **2.  Adverse Employment Action "Because Of" Disability**

21          The third prong of a disability discrimination claim requires the Plaintiff to

22   establish that the adverse employment action was because of his disability.  To satisfy

23   this element, "the plaintiff's disability must have been a 'substantial motivating factor'

24   in the particular employment decision."  *Harris v. City of Santa Monica*, 56 Cal. 4th 203,

25   233 (2013).  It is undisputed that termination is an adverse employment action.  *Brooks*

26   *v. City of San Mateo*, 229 F.3d 917, 928–28 (9th Cir. 2000).  As discussed, Amazon has

27   provided a copy of Plaintiff's investigation file as Exhibit B, which purports to

28   demonstrate Plaintiff's badge swipe history and instances of Plaintiff's timecard fraud.

1   (Robles Decl. ¶¶ 6–7; Ex. B.)  Plaintiff has not provided any contrary evidence

2   indicating that he was terminated because of his disability nor has he provided

3   evidence that Exhibit B is not what it purports to be.  Because Plaintiff does not

4   meaningfully rebut Amazon's evidence, he cannot establish that his disability was a

5   substantial motivating factor in his termination.

6        **3.  Pretext for Discrimination**

7        Once the employer has proffered a legitimate reason for the discharge, the

8   burden shifts to the Plaintiff to raise a genuine dispute of material fact as to whether

9   this reason was a pretext for discrimination.  The Ninth Circuit explains how Plaintiff

10  can show the requisite pretext:

11       [A] plaintiff can prove pretext in two ways: (1) indirectly, by
         showing that the employer's proffered explanation is
12       "unworthy of credence" because it is internally inconsistent
         or otherwise not believable, or (2) directly, by showing that
13       unlawful discrimination more likely motivated the
         employer. These two approaches are not exclusive; a
14       combination of the two kinds of evidence may in some
         cases serve to establish pretext so as to make summary
15       judgment improper.

16  *Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000)

17  (citations omitted).  If a plaintiff uses circumstantial evidence to satisfy this burden,

18  such evidence "must be specific" and "substantial."  *Godwin v. Hunt Wesson, Inc.*, 150

19  F.3d 1217, 1222 (9th Cir. 1998).  Plaintiff fails to make this showing.  Plaintiff places

20  great emphasis on the fact that, when he tried to log his time, his badge did not

21  always work to clock in and out of the kiosks and that the A-to-Z app often had

22  glitches.  (*See, e.g.*, PSUF ¶¶ 22, 25.)  While these facts are undisputed, they are

23  unpersuasive and irrelevant in establishing inconsistency, and thus pretext, in

24  Amazon's reasons for his termination.  Pretext may be demonstrated by showing "the

25  proffered reason had no basis in fact, the proffered reason did not actually motivate

26  the discharge, or, the proffered reason was insufficient to motivate discharge."  *Soria*

27  *v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 594 (2016) (citation omitted).

28  Here, regardless of whether Plaintiff used his badge at a kiosk or the A-to-Z app to

1  track his time (or relied on a supervisor to assist in the event of an app glitch), every

2  day that he worked, Plaintiff conceded that he first needed to swipe his badge to gain

3  entrance to the building.  (PSUF ¶ 4.)  Those entrance badge swipes (or lack thereof)

4  were captured by the authenticated data reflected in Exhibit B to Robles's declaration

5  and reflect instances where Plaintiff claimed working hours on days that he was "not

6  badged in."  (*See* Ex. B at 15–16.)

7          Plaintiff's contention that Darryl Moncion, the Process Assistant, made remarks

8  to him that he was not injured does not establish pretext to defeat Amazon's proffered

9  reason.  (P's Resp. to DSUF ¶ 14.)  It is undisputed that Plaintiff told Darryl that he

10  would not do certain tasks because of his work restrictions and Plaintiff also agreed

11  that that he was not terminated for his refusal to complete those tasks in response to

12  Darryl's comments.  (*Id.*)  Plaintiff has not provided sufficient evidence to demonstrate

13  pretext and a reasonable jury would not find that Amazon's proffered reason for

14  termination—timecard fraud—had "no basis in fact."  *Soria*, 5 Cal. App. 5th at 594.

15          Accordingly, summary judgment on Plaintiff's disability discrimination claim is

16  GRANTED.

17      **B.  FEHA Retaliation Claim**

18          FEHA's anti-retaliation provision makes it unlawful "[f]or any employer . . . to

19  discharge, expel, or otherwise discriminate against any person because the person

20  opposed any practices forbidden under this part . . . ."  Cal. Gov't Code § 12940(h).

21  The elements of a retaliation claim under FEHA are 1) Plaintiff engaged in a protected

22  activity, 2) the employer subjected the employee to an adverse employment action,

23  and 3) there is a causal link between the protected activity and the employer's action.

24  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005).  FEHA retaliation claims are also

25  analyzed under the burden-shifting framework set forth in *McDonnell Douglas*.  *Id.* at

26  1042.

27          As to the first element, "[i]t is well established that a retaliation claim may be

28  brought by an employee who has complained of or opposed conduct that the

1    employee reasonably believes to be discriminatory, even when a court later

2    determines the conduct was not actually prohibited by the FEHA." *Id.* at 1043.

3    Plaintiff contends that he engaged in protected activity once "he notified [Amazon] of

4    his injury, his need for accommodation and his subsequent complaint that his hours

5    were being reduced two weeks before his termination." (Opp'n at 24.) As support,

6    Plaintiff provides an email exchange between his worker's compensation

7    representative and Amazon's representative that purportedly reflects Plaintiff's

8    complaint. (Wright Decl. ¶¶ 7–8.) Amazon provides the same email exchange in

9    connection with the declaration of Alex Hayes, Amazon's Site Workplace Health and

10   Safety Manager. (Hayes Decl. ¶ 6.) Hayes bases his declaration on his personal

11   knowledge as well as his knowledge and familiarity with Amazon's practices regarding

12   workplace accommodations and injury prevention matters. (*Id.* ¶¶ 2–3.) Specifically,

13   Hayes asserts his familiarity with Amazon's Return to Work tool ("RTW"), which

14   matches an employee's work restrictions with appropriate job placement paths. (*Id.*

15   ¶ 5.) As discussed earlier regarding Robles's declaration, Hayes has adequately

16   established that he is qualified to testify as to the authenticity of these business

17   records under Rule 803(6).

18        Permitting an inference per *Yanowitz* that Plaintiff's belief and resulting

19   complaint to his representative about his hours' reduction sufficiently constituted

20   protected conduct, Plaintiff cannot establish the causation element for a retaliation

21   claim. The email exchange both parties rely on states that Plaintiff is "being

22   accommodated at six hours per shift" in response to Plaintiff's representative's

23   question whether Amazon could accommodate Plaintiff's latest work restrictions.

24   (Hayes Decl. ¶ 6(y) and Ex. A at 20–21; Wright Decl. ¶ 8 and Ex. P.) A reasonable jury

25   could not infer from this email exchange that Plaintiff's hours' reduction was retaliatory

26   in nature, but rather, would understand that Plaintiff's work restrictions were being

27   accommodated pursuant to the latest medical directives. Nor has Plaintiff provided

28   other evidence to show that his termination by Amazon two weeks later was

1  connected to his work restrictions. It is undisputed that Plaintiff acknowledged that he

2  was not terminated on account of any complaints about his work restrictions. (P's

3  Resp. to DSUF ¶ 14.) During oral argument, Amazon's counsel noted that Amazon

4  investigated multiple individuals at the facility for timecard fraud beginning in

5  December up until March or April 2021 and that all individuals who engaged in

6  timecard fraud were terminated, including Plaintiff. (*See* Robles Decl. ¶¶ 8, 10

7  ("During this time, there were many instances of suspected timecard fraud. [Human

8  Resources] conducted investigations and multiple employees were terminated for

9  timecard fraud as a result.").) Accordingly, Amazon has adequately established that

10  the investigation and termination of Plaintiff was part of a larger investigatory sweep

11  and not because of Plaintiff's requests for accommodation.

12       As there are no genuine disputes of material fact, summary judgment on the

13  retaliation claim is GRANTED.

14  **C. FEHA Failure to Accommodate Claim**

15       Pursuant to the FEHA, it is unlawful "[f]or an employer ... to fail to make

16  reasonable accommodation for the known physical . . . disability of an . . . employee."

17  Cal. Gov't Code § 12940(m). The elements of a failure to accommodate claim are: 1)

18  the plaintiff has a disability under the FEHA, 2) the plaintiff is qualified to perform the

19  essential functions of the position, and 3) the employer failed to reasonably

20  accommodate the plaintiff's disability. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495,

21  498 (9th Cir. 2015) (citation omitted). "Reasonable accommodation" means a

22  "modification or adjustment to the workplace that enables a disabled employee to

23  perform the essential functions of the job held or desired." *Taylor v. Trees*, 58 F. Supp.

24  3d 1092, 1111 (E.D. Cal. 2014). The reasonableness of an accommodation is

25  generally a question of fact. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 228

26  n.11 (1999). A claim under section 12940(m) differs from a section 12940(a)

27  discrimination claim in that an adverse employment action need not be shown, nor is

28

1    any showing of a causal nexus between one's disability and an adverse employment

2    action required.  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 255–56 (2000).

3          Amazon is not entitled to summary judgment on the accommodation claim.  As

4    previously discussed, Hayes testifies that Amazon has provided records listing

5    Plaintiff's history of his work restrictions, the identified accommodations as provided

6    by Amazon's Return to Work tool, and email communications to Plaintiff informing him

7    of the new placements.  (Hayes Decl. ¶¶ 6–8 and Exs. A–B.)  Plaintiff's argument that

8    Hayes's declaration is inadmissible for lack of personal knowledge and hearsay is

9    inapplicable for the reasons discussed previously as to the Robles's declaration.

10   Plaintiff does not provide any evidence to demonstrate that he did not accept these

11   placements, instead conceding that, following his injury, he was moved to a different

12   department.  (P's Resp. to DSUF ¶ 17.)

13          However, "[o]nce aware [of an employee's disability], the employer has an

14   affirmative duty to reasonably accommodate, which is not extinguished by one effort."

15   *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. Jul. 14, 2015) (citation

16   omitted); *Humphrey v. Mem. Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)

17   (same).  There are genuine disputes of material fact regarding whether Plaintiff was

18   reasonably accommodated after he was moved to the receiving department.  For

19   example, Plaintiff provides an email from November 2020 reflecting that he

20   complained to his worker's compensation representative about his work restrictions

21   not being accommodated, while acknowledging in the same email that he has been

22   "accommodated on site to date."  (Wright Decl. ¶ 8, Ex. O (ECF No. 17-4 at 29).)  In

23   that same email, Plaintiff's restrictions include the following: "[M]ay lift up to 20 lbs

24   occasionally" and "[m]ay push/pull up to 40 lbs occasionally."  (*See* Ex. O.)  Plaintiff

25   also states that he ultimately refused to do certain tasks, such as running totes, that he

26   believed violated his work restrictions and acknowledges that he was not terminated

27   for such refusal.  (P's Resp. to DSUF ¶ 14.)  The record reflects that Plaintiff

28   communicated his difficulties with his work assignments to Darryl, the person who

1    oversaw the production area where Plaintiff worked.  For example, during his

2    deposition, Plaintiff states that he engaged in tote running a "handful of times," that

3    Darryl believed Plaintiff was not injured, that Plaintiff reported to the medical on-site

4    representative that tote running "was making it worse," and that tote running caused

5    him "a lot of pain." (Nelson Dep. 69:6–15; 69:25–70:12.)  The parties agree that a cart

6    full of totes was "approximately up to 50 to 60 pounds." (P's Resp. to DSUF ¶ 13.)

7    During deposition, Nelson explained that "running totes" meant to "put all the totes

8    on the cart.  And run those totes to those designated areas where they needed to

9    restock." (Nelson Dep. 68:8–11.)

10         At oral argument, Amazon's counsel acknowledged that there were restrictions

11    pertaining to how much Plaintiff could lift, and that those restrictions were different

12    from how much Plaintiff could push.  Notably, none of the exhibits Amazon provides in

13    connection with the declaration of Alex Hayes permits Plaintiff to push or pull 50 to 60

14    pounds. (*See generally* Hayes Decl.)  A reasonable jury could conclude that Plaintiff

15    was not being accommodated as to his restrictions on how much weight he could

16    push or pull.

17         Because there are genuine disputes of material fact as to whether Plaintiff was

18    accommodated in the receiving department, Amazon is not entitled to summary

19    judgment on the accommodation claim.

20    **D. FEHA Failure to Engage in Interactive Process**

21         Section 12940, subdivision (n) provides that it shall be an unlawful employment

22    practice for employers "to fail to engage in a timely, good faith interactive process

23    with the employee . . . to determine effective reasonable accommodations, if any, in

24    response to a request for reasonable accommodation by an employee . . . with a

25    known physical or mental disability or known medical condition." Cal. Gov't Code

26    § 12940(n).  There is no genuine dispute that Amazon has provided sufficient

27    evidence of the company's efforts to accommodate Plaintiff's changing work

28    restrictions throughout his time with the company, and that Plaintiff accepted these

efforts.  Accordingly, summary judgment on the failure to engage in the interactive process is GRANTED.

**E. FEHA Failure to Prevent Disability Discrimination and Retaliation Claims and Wrongful Discharge Claim**

Because Plaintiff's disability discrimination and retaliation claims fail as a matter of law, he cannot proceed on his remaining claims.  Accordingly, summary judgment is GRANTED on Plaintiff's remaining causes of action.[12]

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (ECF No. 9) is GRANTED IN PART as follows:

1. Summary Judgment is GRANTED as to Claims 1, 3, 5, 6 (only as to failure to prevent discrimination and retaliation), and 7; and

2. Summary Judgment is DENIED as to Claim 4.

IT IS SO ORDERED.

Dated:  **January 27, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8–Nelson.24cv1710.msj

---

[12] Plaintiff's claim 2 and part of claim 6 involving harassment are not included in the Order per the parties' representation that they intend to stipulate to dismissal of these claims as well as Plaintiff's request for punitive damages.

21